126

HARRY L. FORD, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (International Harvester Co., Appellee).

*Opinion filed September 30, 1981.*

Elmo E. Koos, of Peoria, for appellant.

Henry D. Noetzel & Associates, Ltd., of Peoria (John E. Mitchell, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Harry L. Ford, filed two applications for adjustment of claim seeking worker's compensation for injuries suffered in separate accidents while in the employ of respondent, International Harvester Company. After a consolidated hearing, an arbitrator for the Industrial Commission found that as to each occurrence petitioner had sustained accidental injuries arising out of and in the course of his employment. As the result of injuries suffered on June 6, 1975, petitioner was awarded compensation for a period of 20 weeks for the permanent loss of 10% of the use of his left leg. He was awarded compensation for 46 2/7 weeks for temporary total incapacity resulting from an occurrence on July 31, 1975. On review, after taking additional evidence, the Industrial Commission reversed the arbitrator's awards, and on *certiorari* the decision of the Commission was confirmed by the circuit court of Peoria County. Petitioner appealed each claim separately (73 Ill. 2d R. 302(a)), and we ordered them consolidated.

Petitioner was employed by respondent as a material checker. On June 6, 1975, he stepped off a pallet box,

turned his left leg and twisted his back. Thereafter he noticed pain in his back and knee and had problems walking. Petitioner testified before the arbitrator that he completed his shift but mentioned the injury to his immediate foreman, Marty Wilson. He was treated for the injury by Dr. Franz Strauch.

On July 31, 1975, while petitioner was moving from pallet to pallet checking material, he stepped back and his left foot went into a hole where a forklift truck had moved a block out of the floor. He immediately felt a severe pain in his left hip and leg, and experienced difficulty in walking and moving around. He testified that he again mentioned the injury to his foreman and that he again received treatment from Dr. Strauch. Petitioner testified that he missed work several days because "I just was hurting and I didn't feel like going in and working." In November 1975 he was discharged for absenteeism. On cross-examination petitioner testified that he did not seek treatment at a first-aid station at respondent's plant on June 6, 1975, but that he did report to the nursing station on approximately June 9, 1975. He also testified that he saw a plant physician, Dr. Quinones, who accused him of "sandbagging."

Two physician's reports offered by petitioner were received into evidence. One concerned a neurological consultation with Dr. Floyd S. Barringer and noted that petitioner had a previous history of work-related injury to the lower back in 1968. The report referred to atrophy and weakness in petitioner's left leg and predicted that he would "almost certainly need a brace for the left lower extremity." It was not clear from this report whether petitioner's symptoms were the result of his most recent injuries or whether they were related to his 1968 injury.

The report of Dr. Strauch also made reference to petitioner's previous injury. It described a defect in a ligament of petitioner's left knee and also noted defects in the ligaments of the lower back which could be responsible

for some of petitioner's leg pain. Dr. Strauch was of the opinion that petitioner "had an injury from work such that he is now unemployable."

Marty Wilson, petitioner's immediate superior on the dates in question, testified for respondent. He said that he did not work on June 6, 1975, because he was sick. He did not recall any conversation with petitioner regarding a work-related injury on July 31, 1975. He also testified that when an injury is reported to him, he directs the injured person to the first-aid station unless treatment has already been rendered.

On review respondent called several additional witnesses, one of whom was the head nurse at respondent's plant. Medical records, introduced into evidence, contained no entry showing that petitioner had been treated at the plant on or about June 6, 1975, June 9, 1975, or July 31, 1975. Dr. Quinones testified that he had never accused petitioner of sandbagging.

Petitioner introduced the evidence deposition of Dr. Barringer. He testified that he first treated petitioner for a work-related injury in 1970 and in 1972 performed surgery to remove a ruptured disc from between the fourth and fifth lumbar vertebrae on petitioner's left side. Later that year petitioner was operated on again and more disc material was removed from the same area.

Dr. Barringer next saw petitioner in September 1976 and examination revealed wasting in the left leg and weakness in the left foot and leg. He saw petitioner again in December of that year and noted "severe" weakness in the left foot, as well as numbness, and more pronounced wasting in the left leg. He testified that petitioner "very well possibly had a ruptured disc at L-5 and S-1 on the left side, which was not the same location that he had before." When asked on cross-examination whether he was testifying that the injuries petitioner incurred in 1975 were aggravations of a preexisting condition, Dr. Barringer testified that "it was

more than that, this was at L-5 and S-1. It was more than an aggravation. It was another disc at another interspace."

The circuit court, in confirming the decision of the Industrial Commission, noted a motion to quash the writ of *certiorari* with respect to each case. It ordered that the motion be allowed and that the record of the Industrial Commission be sustained.

Petitioner first contends that the circuit court was without jurisdiction to allow a motion to quash a writ of *certiorari* because no such motion was ever filed by respondent. While we agree that allowance of a motion to quash was not the proper order, the effect of the circuit court's action was to confirm the decision of the Industrial Commission. However, we need consider only the correctness of the circuit court's judgment and not the form of its order.

Petitioner contends that the evidence clearly established that his injuries arose out of and in the course of his employment and that respondent did not adduce any evidence that they were incurred in any other manner or at any other time.

In *Hiram Walker & Sons, Inc. v. Industrial Com.* (1978), 71 Ill. 2d 476, 479, concerning a reviewing court's function in cases such as this, the court said:

> "The determination of disputed facts and the drawing of reasonable inferences from the evidence in workmen's compensation cases are the province of the Industrial Commission, and its findings regarding the nature and extent of a disability will not be set aside unless they are contrary to the manifest weight of the evidence. (*A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 246; *Parris v. Industrial Com.* (1977), 69 Ill. 2d 31, 37-38; *Ferrin Cooperative Equity Exchange v. Industrial Com.* (1976), 64 Ill. 2d 445, 448-49.) In reviewing those findings and conclusions the function of a court is limited to determining whether they are contrary to the manifest weight of the evidence. Only in the event they are may the courts intervene. (*A. O.*

*Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 245-46.)"

Measured against this standard, the decision of the Commission was correctly confirmed by the circuit court. It is true, as petitioner contends, that respondent presented no evidence tending to prove that petitioner was injured in another manner or at another location. However, it is within the province of the Industrial Commission to disbelieve a claimant where, as here, a number of factors combine to undermine his credibility. (See *Watts v. Industrial Com.* (1979), 77 Ill. 2d 30, 34; *Scott v. Industrial Com.* (1979), 76 Ill. 2d 183.) Petitioner's veracity was cast into doubt by the contrary testimony of Marty Wilson and Dr. Quinones, by the absence of corroborating entries in the plant medical records, by petitioner's long history of absenteeism and his dismissal therefor, and finally by the fact that petitioner's applications for adjustment of claims were not filed until after he was dismissed for absenteeism.

For the reasons stated the judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*